**In re ANDERSON GRAIN CORPORATION, Debtor.**

**In re SUNMARK GRAIN, INC., Debtor.**

**In re ZIPP INDUSTRIES, INC., Debtor.**

**In re PAX INDUSTRIES, INC., Debtor.**

Bankruptcy Nos. 596–51099–11 to 596–51102–11.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Sept. 18, 1997.

---

Vernon O. Teofan, Jenkens & Gilchrist, Dallas, TX, for CIT.

R. Byrn Bass, Jr., Lubbock, TX, for Anderson Grain.

Robert B. Wilson, Lubbock, TX, for Sunmark Grain.

Max Tarbox, Lubbock, TX. for Zipp Industries.

Deborah Penner, David R. Langston, Mullin, Hoard & Brown, L.L.P., Lubbock, TX and L.E. Creel, III, Malouf Lynch Jackson, Dessler & Collin, Dallas, TX, for Pax Industries.

## MEMORANDUM OF OPINION ON MOTION FOR CLARIFICATION

JOHN C. AKARD, Bankruptcy Judge.

By order entered May 27, 1997, the court confirmed the Final Confirmed Plan[1] (Plan) proposed by Anderson Grain Corporation, Sunmark Grain, Inc., Zipp Industries, Inc., Pax Industries, Inc. (collectively the Debtors), the Official Creditors' Committee for Anderson Grain Corporation, and the Official Creditors' Committee for Zipp Industries, Inc. On June 4, 1997, the United States Trustee filed his Motion for Clarification of Confirmation or Alternatively, to Compel the Filing of Fee Applications (Motion for Clarification). The court grants the Trustee's motion.[2]

## BACKGROUND

In the Motion for Clarification, the United States Trustee objects to provisions of Paragraph 4 of the Order Confirming the Plan which read as follows:

William S. Parkinson, Office of U.S. Trustee, Dallas, TX, United States Trustee.

1. The Second Amended Joint Plan of Reorganization proposed by these same parties was approved by all necessary classes in voting conducted in accordance with the Bankruptcy Code. At the confirmation hearing, the parties announced modifications which did not adversely affect any party. The court confirmed the Second Amended Joint Plan as modified at the confirmation hearing. In order to avoid confusion in the future, the parties agreed to a Final Confirmed Plan which incorporated the changes announced at the confirmation hearing and was filed with the court on June 5, 1997. An Agreed Order Nunc Pro Tunc Clarifying Order Confirming Plan was entered on June 5, 1997. That order did not change the Final Confirmed Plan nor did it change the terms of the Order Confirming Plan.

2. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(L).

4. All payments made or promised by any of the Debtors or by any other person for services or for costs and expenses in, or in connection with the Plan, and incident to the case, **exclusive of fees and expenses incurred by CIT to be paid on the Effective Date pursuant to the CIT Takeout Loan,** have been fully disclosed to the Court and are reasonable.

(emphasis added.)

The Trustee is concerned that the emphasized language violates the provisions of §§ 506(b) and 1129(a)(4) of the Bankruptcy Code.[3] Not having seen the fee statements for the attorneys for The CIT Group/Business Credit, Inc. (CIT), the Trustee does not know whether he will object to the fees and expenses. He asserts that an appropriate fee application should be filed in order for the court to review those fees. The Trustee states that the reason the Bankruptcy Code includes court review of fees is to eliminate fee trading among professionals and to insure that fees charged to a debtor's estate are reasonable in order to provide maximum distribution to unsecured creditors. The Trustee notes that debtors in financial distress and, often, creditors' committees do not have good bargaining positions with respect to fee demands.

At the confirmation hearing the plan proponents stated that CIT agreed to provide postconfirmation financing in accordance with a term sheet attached to the Plan and Disclosure Statement. The term sheet provided that CIT would grant an $8,800,000.00 revolving line of credit and a $1,200,000.00 term loan on specified terms and conditions at specified interest rates to the reorganized debtor (borrower). In addition, the borrower agreed to pay various fees including a line of credit fee of 0.50% per annum on the unused portion of the revolving line of credit, a $30,-000.00 annual collateral management fee, and a $100,000.00 facility fee payable at closing. Paragraph 11 of the term sheet entitled "Key Conditions," subdivision (b) provides "Initial

advance will be used to retire the [CIT] prepetition debt and all expenses incurred by [CIT] or its professionals in the bankruptcy proceeding of Borrowers."

Article II of the Plan, describing the concept of the Plan states that the assets of Anderson and Sunmark will be liquidated and the net proceeds applied on the prepetition debt owed to CIT (CIT Debt). It further provides:

B. *Payment of the CIT Debt.*

1. All CIT Debt remaining unpaid on the Effective Date shall be paid in full with loan proceeds from draws against the CIT Take-out Loan.

2. Thereafter, the Reorganized Debtor and the Reorganized Subsidiary, as borrowers, shall be obligated to pay and to perform in accordance with the terms and provisions of the CIT Take-out Loan which will be effectuated on the Effective Date.

CIT opposed the Trustee's Motion, noting that on page 34 of the Plan, the term "CIT Take-out Loan" was defined to be a postconfirmation loan made by CIT in accordance with the term sheet or such other exit financing as might be available from other lenders. The Plan was negotiated between the Debtors, the Creditors' Committees, CIT and various other creditors. No party objected to confirmation. CIT's debt would be paid in full under the terms of the Plan. CIT argues that its bankruptcy fees and costs were paid pursuant to the postconfirmation financing arrangements. Thus, they are not subject to court review.

On page 33 of the Plan, the term CIT Debt is defined as follows:

"*CIT Debt*"—shall mean and include all Allowed Claims of CIT against all of the Four Debtors, whether secured, unsecured, administrative, super-priority, priority, prepetition or postpetition which remains unpaid on the Effective Date, including allowable interest and costs—also, the "CIT Zipp/Pax Claims."

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code. Although the fees for other professionals were disclosed at the

confirmation hearing, the filing of formal fee applications and approval of the fees was not accomplished until after the entry of the Order Confirming Plan.

The court concludes that this definition would have allowed CIT to assert claims for attorney's fees and expenses under § 506(b) if the postconfirmation financing had been provided by a third party. The court has not been directed to any waiver of bankruptcy attorney's fees and expenses by CIT if the postconfirmation financing were provided by a third party.

## STATUTES

**11 USC § 506. Determination of secured status.**

. . . .

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

**11 USC § 1129. Confirmation of plan.**

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

## DISCUSSION

Adversary proceedings were filed in these cases contesting the validity of some of the liens asserted by CIT. One creditors' committee filed an adversary proceeding requesting that CIT's liens be subordinated to the claims of unsecured creditors. These claims were waived in the Plan and the parties agreed to dismiss the adversary proceedings. Undoubtedly, a factor in these negotiations was that CIT agreed to provide postconfirmation financing. As the transaction was structured, CIT's bankruptcy attorney's fees and costs were paid as a part of the postconfirmation financing; they were not paid as a part of CIT's claim. The parties agreed that CIT's prepetition claim would be paid in full.

If the postconfirmation financing had been provided by a third party, CIT's claim for attorney's fees and expenses would have become a part of its claim and the court would have had to determine under § 506 whether CIT was entitled to attorney's fees and expenses as part of its claim and, if so, in what amount. Since CIT's bankruptcy attorney's fees and expenses were not paid as a part of its claim, it is not necessary for the court to make the § 506 determination. The provisions of the term sheet made CIT's bankruptcy attorney's fees and expenses an additional charge for the use of the funds provided in the postconfirmation financing.

■ The next question is whether the court is obligated to review CIT's bankruptcy fees and expenses under § 1129(a)(4) since they were paid as part of the postconfirmation financing.[4] In this case, the postconfirmation financing was done by the reorganized debtor which acquired the assets (to the extent they were not liquidated as part of the Plan) of all four Debtors. In addition, the reorganized debtor issued securities in exchange for unsecured debt. Consequently, the reorganized debtor is "a person issuing securities or acquiring property under the Plan." The attorney's fees and expenses requested by CIT are, by its own definition, "for services or for costs and expenses in or in connection with the case." Thus, CIT's attorney's fees are clearly "subject to the approval of the court as reasonable" and the court must modify its Order Confirming Plan to delete the exemption for CIT's fees and expenses. *See In re Allegheny Int'l, Inc.,* 134 B.R. 814, 817 (Bankr.W.D.Pa.1991) *aff'd,*

---

**4.** This raises a larger question as to whether the court is obligated to review the fees and expenses of any lender providing postconfirmation financing as part of a plan of reorganization. However, it is not necessary for the court to address that issue, because a term sheet specified that it would be CIT's bankruptcy fees and expenses which were paid as part of the financing. The Trustee did not object to fees and expenses related to the postconfirmation financing.

*Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253 (3d Cir.1995).

CIT argues that the Trustee's Motion for Clarification is not procedurally correct. Further, it argues that since there was no stay of the effectiveness of the Order Confirming Plan, the Trustee's motion is moot. The Trustee's motion was brought pursuant to FED. R. BANKR. P. 9023 which incorporates FED R. CIV. P. 59.[5] The motion was timely pursuant to FED. R. CIV. P. 59(e). The Trustee's motion asks the court to alter the judgment by deleting the objectionable provision and to require CIT's attorneys to file an appropriate fee application. The court finds that the Trustee's motion is procedurally correct.

■ The Trustee's Motion for Clarification is not moot. It was directed to only one matter and would not have a disruptive effect on the operation of the Final Plan of Reorganization. Should the court determine that some of CIT's attorney's fees and expenses are not reasonable, the court would issue an order to the attorneys to disgorge the unreasonable amounts. Such disgorgement would not adversely affect the Plan, but would provide additional operating capital for the reorganized debtor.

### CONCLUSION

The fees and expenses of CIT's attorneys in connection with the captioned bankruptcy cases which were paid as part of the postconfirmation financing, are subject to review by the Bankruptcy Court under § 1129(a)(4) of the Bankruptcy Code. The provisions of the Order Confirming Plan will be modified to delete the exemption of CIT's fees and expenses from court review. CIT will be ordered to file an appropriate fee application in this proceeding.

ORDER ACCORDINGLY.[6]

---

**5.** The Trustee's Motion is also based on FED. R. BANKR. P. 9024 which incorporates FED. R. CIV. P. 60. Since the relief requested is available under FED. R. BANKR. P. 9023, the court will not address the alternate grounds.

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052 which is made applicable to Contested Matters by FED. R. BANKR P. 9014. This Memorandum will be published.